UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MILLIE SUE CASTON | CIVIL ACTION |
| VERSUS | NO. 08-697 |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION | SECTION "N" (3) |

## REPORT AND RECOMMENDATION

Before the Court are cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Having reviewed the motions, administrative record and applicable law, **IT IS RECOMMENDED** that the Court GRANT the Commissioner's Cross Motion for Summary Judgment, DENY Plaintiff's Motion for Summary Judgment and DISMISS this case with prejudice.

### I. BACKGROUND

#### A. Procedural History

Plaintiff/claimant, Millie Sue Caston ("Caston"), seeks judicial review under 42 U.S.C. § 405(g) of the Social Security Act ("the Act") of the Social Security Administration Commissioner's final decision finding Plaintiff not disabled and therefore ineligible for disability benefits under the Act. On June 2, 2005, Templet applied for a period of disability and disability insurance benefits, claiming that she became unable to work on May 12, 2005, due to

1

"heart problems (5 bypasses), high blood pressure, high cholesterol and blurry/spotty vision."[1] Plaintiff alleged at the outset that she has extreme pain doing any activity, she cannot lift or carry anything over 5 pounds and sees spots in her vision, which is very blurry.[2] Plaintiff claimed that she stopped working on May 12, 2005 because she believed that she had a heart attack and that she was in no condition to continue working.[3]

Plaintiff's disability request was initially denied.[4] She then filed a request for a hearing before an Administrative Law Judge, disagreeing with the determination on the basis that she had bypass surgery and experienced leg weakening and blindness.[5] A representative, Melanie Leavitt, was appointed to represent Caston at the June 13, 2007 hearing.[6]

At the hearing, counsel verified that she had reviewed the file consisting of Exhibits 1A through 8F and that it was complete.[7] Plaintiff testified that she was admitted to the hospital in May, 2005 because of her heart problems and that eventually bypass surgery was performed.[8] As to her condition since the surgery, plaintiff testified that she becomes "out of breath" walking

---

[1] *See* Application for Disability Insurance Benefits filed June 28, 2005 [Adm. Rec. 74]; Adult Disability Report dated February 8, 2006 [Adm. Rec. 85-86].

[2] *Id.* [Adm. Rec. 86].

[3] *Id.*

[4] *See* Disability Determination and Transmittal dated June 28, 2005 [Adm. Rec. 45-46].

[5] *See* Claimant's Request for Hearing By Administrative Law Judge dated November 17, 2005[Adm. Rec. 56].

[6] *See* Form Appointment of Representative dated February 27, 2007 [Adm. 49]; Transcript of the June 13, 2007 Administrative Hearing [Adm. Rec. 187-201].

[7] June 13, 2007 Transcript [Adm. Rec. 190].

[8] *Id.* [Adm. Rec. 190-191].

less than a block. She further testified that she must sit after a few minutes. Caston explained that she goes to grocery store with her husband but that she must ride one of the scooters provided by the store. Apparently, Caston sees well enough to drive a motorized grocery cart. Plaintiff further testified that she experiences both pain and panic attacks. Caston indicated that she had an appointment with her cardiologist at the end of the month.

As to work-related functions, plaintiff stated that although she was capable of lifting a five pound bag of sugar, she could not lift two bags since such activity would hurt and cause her to experience muscle spasms. In addition, she complained that "hammer toes" and spurs cause her legs to hurt if she stands too much.[9]

Addressing her age at the time of the hearing, Caston testified: "If I live to see [it], if its God's will, I'll be 52 [years old] on July 5th, 2007."[10] Plaintiff's education included the 11th grade; however, Caston stated that she was not a very smart person and thus did not finish that grade. She has worked for many years as both a nurse's aide and a housekeeper in a hospital setting.[11] Her job as a housekeeper required that she mop floors, clean rooms and make beds.[12] She performed housekeeping duties (medium exertional level work) from 1998 until May, 2005 when she quit work due to her heart condition.

Vocational Expert (VE) Todd Capielano, who was accepted as an expert by the ALJ and plaintiff's counsel, also testified at the hearing. Based upon the hypothetical posed by the ALJ,

---

[9] *Id.* [Adm. Rec. 192-193].

[10] *Id.* [Adm. Rec. 193].

[11] *Id.* [Adm. Rec. 194].

[12] *Id.* [Adm. Rec. 194].

VE Capielano testified that there were a significant number of light jobs at the entry level available in the Louisiana and national economy that Caston could perform, including work as a production assembler, packager or packer, *inter alia.* Because of the need for 30 minute positional changes, the VE limited the number of jobs available by 50%.[13]

Following the administrative hearing and pursuant to his review of the record, Administrative Law Judge Gary L. Vanderhoof determined that : (1) Caston met the insured status requirements of the Act through December 31, 2009; (2) she had not engaged in substantial gainful activity since May 12, 2005 (the alleged date of onset); (3) the medical evidence supported her claims of coronary artery disease, status post bypass grafting surgery times five, which are "severe" impairments in that these are medically diagnosed and caused "more than a minimal effect on her ability to perform basic physical work-related activities;[14] (4) none of her impairments, either singly or in combination, meet or medically equal one of the listed impairments; (5) plaintiff is unable to perform any of her "past relevant work" as a nurse's aide/housekeeper (medium exertional level work); and (6) based on the testimony of VE Capielano, the ALJ determined that Caston could perform the requirements of light exertional, entry level jobs with routine activities, such as the job of production assembler and cashier. Due to the additional sit/stand option or restriction placed upon Ms. Caston's ability to sit and stand, the VE reduced the number of jobs available in the State and national economy by 50%.

---

[13]*Id.* [Adm. Rec. 195-199].

[14]As to Caston's allegations of "panic attacks" at the time of the June, 2007 hearing, the ALJ determined that there were no such "medically determinable" mental impairments (including but not limited to panic attacks). In this regard, ALJ Vanderhoof explained that the medical evidence reflects no complaints of any such condition, nor evaluations or assessments of of any such mental symptoms or impairments. [Adm. Rec. 23].

4

Because there was work available in the State and national economies at the light exertional level that Caston was capable of performing, the ALJ concluded that plaintiff was not "disabled" within the meaning of the Social Security Act up to and including the time of the determination.[15]

On August 6, 2007, Caston sought review of the hearing decision/order.[16] On December 7, 2007, the Appeals Council denied the request for review and adopted the decision of the ALJ as the final decision of the Commissioner.[17] On January 23, 2008, plaintiff timely filed the captioned matter.[18] The case has been fully briefed on cross-motions for summary judgment and is ripe for determination.

### B. Medical Evidence

Essentially, Caston asks the Court to *reweigh* the evidence. More specifically, Plaintiff contends that the ALJ ignored the medical records and her testimony in determining that she was not disabled, arguing that both clearly show that she is disabled within the meaning of the Act. This Court is not persuaded.

At the outset, the undersigned notes that it is not disputed that Plaintiff's alleged panic attacks are subclinical since she has never been treated for same. At no time during the hearing

---

[15] *See* ALJ Gary L. Vanderhoof's Decision dated June 28, 2007 [Adm. Rec. 21-28].

[16] *See* Request for Review of Hearing Decision dated August 6, 2007; Correspondence of Counsel (James S. Conner) dated August 6, 2007 [Adm. Rec. 13-15]; Counsel's Letter Brief dated October 7, 2007 (arguing that the ALJ's RFC determination is not based upon substantial evidence in that it is not supported by the opinion of plaintiff's treating physician, Dr. Ali Amkieh, and that he would have found plaintiff limited to sedentary work, which would require a finding of disability under Grid Rule 201.10) [Adm. Rec. 6-9].

[17] *See* Notice of Appeals Council Action dated December 7, 2007 [Adm. Rec. 3-5].

[18] *See* Complaint [Fed. Rec. Doc. 1].

did Caston refer to any medical treatment for such a condition; at no time prior to the hearing did plaintiff indicate that any mental condition, no matter how slight, had any effect on her ability to participate in gainful employment. The undersigned's *de novo* review of the plaintiff's medical records corroborate the ALJ's conclusions that Caston is not suffering from any combination of *disabling* impairments or conditions.

Turning to Caston's cardiac care history, medical records of Lakeview Regional Medical Center reveal that on May 12, 2005, plaintiff was admitted with a diagnosis of coronary insufficiency. She underwent "aortocoronary bypass surgery times five."[19] On May 22, 2005, plaintiff was discharged with the following final diagnosis, to wit: "multi vessel coronary artery disease with exertional angina and preserved left ventricular function."[20] Regarding her post-operative condition, plaintiff's discharge summary explained:

> The patient tolerated the procedure well, and by postoperative day #1 was extubated and fully neurologically intact. Her invasive monitoring lines and mediastinal sump were removed on postoperative day #1. She was transferred to the Telemetry Unit for further care. By postoperative day #4, she remains afebrile and hemodynamically stable in normal sinus rhythm. She is ambulatory on room air oxygen with good saturations. Her wounds are clean and dry, and she has no complaints. She is ready for discharge.[21]

Caston followed up with Dr. Purohit on October 20, 2005.[22] Thereafter, plaintiff was not treated for a period of fifteen (15) months until February 12, 2007, when she presented at the

---

[19] *See* Lakeview Regional Medical Center Operative Report [Adm. Rec. 128].

[20] *See id.,* at Discharge Summary [Adm. Rec. 133].

[21] *Id.*

[22] *See* Dr. Surendra Kumar Purohit's Clinic Notes [Adm. Rec. 164].

Heart and Vascular Clinic.[23] On February 28, 2007, Dr. Ali Amkieh performed a Holter Monitor study which revealed: "(1) Normal sinus rhythm with mean heart rate of 76 bpm; (2) Frequent PVCs count 1084; (3) 3 isolated PACs; and (4) No heartblock."[24] The ALJ's decision accurately reflects that plaintiff's only complaint was becoming "out of breath."[25] There is only one other documented visit with Dr. Amkieh and that was on March 12, 2007. At that point, his notes indicate he had a long discussion with Caston regarding test results and plaintiff's diet and weight - *i.e.*, Caston had gained 19 pounds just since her initial visit in February, 2007.[26]

On May 29, 2007, plaintiff's treating physician, Dr. Amkieh, completed a medical evaluation form which also contained a physical residual functional capacity assessment. Therein, plaintiff's treating physician opined that plaintiff was capable of performing a limited range of light work in that: (1) she could lift and carry twenty pounds occasionally and ten pounds frequently; (2) she had no restrictions on her ability to bend stoop or reach overhead; and (3) she could occasionally climb. Dr. Amkieh did not specifically opine precisely how long the plaintiff could sit or stand during an eight hour day; however, he clearly indicated that she could stand or sit for the entire period of an 8-hour workday as long as plaintiff had the option to *alternate between the standing and sitting positions.*[27]

---

[23]*See* Records of the Heart and Vascular Clinic dated 2/12/07 through 3/12/07 [Adm. Rec. 176-186].

[24]*Id.* [Adm. Rec. 184].

[25]Holter Monitor Report noting at Section VII, Patient Diary (noting "diary returned, patient complained of "out of breath" and "symptoms corresponded with sinus rhythm") [Adm. Rec. 184].

[26]*Id.* [Adm. Rec. 177].

[27]*See* May 29, 2007 Evaluation by Dr. Amkieh [Adm. Rec. 186].

The State Agency physician's opinion is consistent with that of Dr. Amkieh in significant part, to wit: (1) can occasionally lift 20 pounds and frequently lift 10 pounds; (2) can stand with normal breaks about 6 hours in an 8-hour workday; (3) can sit with normal breaks for a total of 6 hours in an 8-hour work day. The State's expert further opined that "claimant was having some GI symptoms" but that her cardiac disease *appeared stable*. The State Agency's physician further determined that Caston could occasionally climb, balance, stoop, kneel, crouch and crawl, could never work on ladders and should avoid concentrated exposure to fumes, odors and poor ventilation. [Adm. Rec. 172]. The ALJ considered the opinion of the State Agency medical consultant and reached the conclusion that plaintiff had more restrictions – *i.e.*, restrictions consistent with those determined by plaintiff's treating physician, Dr. Amkieh.[28]

## II. LAW

### A. Standard of Review

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence they must be affirmed. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to

---

[28]*See* Physical Residual Functional Capacity Assessment dated November 7, 2005 [Adm. Rec. 168-171]; *compare* May 29, 2007 Evaluation by Dr. Amkieh [Adm. Rec. 186].

accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, reweigh the evidence or substitute its own judgment for that of the Commissioner. *Carey v. Apfel,* 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 113, 112 S.Ct. 1046, 117 L.Ed.2d 239 (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey,* 230 F.3d at 135. Any of the Commissioner's findings of fact which are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555.

Despite this limited function, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990). A claimant, such as the plaintiff, is considered disabled only if his physical or mental impairment is so severe that he is unable to do not only his previous work, but cannot, considering his age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which he lives, whether a specific job vacancy exists

or whether he would be hired if he applied for work. 42 U.S.C. § 1382(a)(3)(B).

## B. Entitlement to Benefits Under the Act

To be considered disabled and eligible for disability benefits under the Act, Plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 and Appendices, §§ 416.901 to 416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

The five-step procedure for making a disability determination under the Social Security Act was restated in *Shave v. Apfel*, 238 F.3d 592 (5th Cir.2001):

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step

> five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 239 F.3d at 594 ( *quoting Crowley v. Apfel*, 197 F.3d 194 (5th Cir.1999)).

The four elements of proof weighed in determining whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the courts, must resolve conflict in the evidence." *Id*.

### III. ASSIGNMENTS OF ERROR

Plaintiff contends that the ALJ erred by failing to fully credit plaintiff's complaint of *debilitating* cardiac disease. Caston's argument is that her testimony regarding the severity of her cardiac condition and symptomotology should be given more weight in light of her medical treatment history and the evaluation by Dr. Amkieh. Plaintiff further contends that, had the ALJ taken into account the full extent of her impairments and symptoms along with the opinions of treating physicians and evaluating sources, his conclusion would have been that she was limited to sedentary activities at best. In that event, Grid Rule 201.10 directs a finding of disabled, since she is closely approaching advanced age.

The Commissioner contends that substantial evidence and relevant legal standards support the decision that the Plaintiff was not *disabled* within the meaning of the Social Security Act.

### IV. ANALYSIS

#### Substantial Evidence Supports the ALJ's Determination

The issue at this level of review is whether substantial evidence supports the ALJ's rejection of Plaintiff's subjective symptoms and complaints of *disabling* pain in light of the objective medical evidence and treatment records. Plaintiff's chief complaint is a *disabling* cardiac condition.

The law requires that the ALJ make affirmative findings regarding a claimant's subjective complaints. *See Falco v. Shalala,* 27 F.3d 160, 163 (5th Cir. 1994)(*citing Sharlow v. Schweiker,* 655 F.2d 645, 648-49 (5th Cir. 1981)). When a plaintiff alleges disability resulting from pain, he must establish a medically determinable impairment that is capable of producing *disabling* pain. *See Ripley v. Chater,* 67 F.3d 552, 556 (5th Cir. 1999) (*citing* 20 C.F.R. § 404.1529). Once a medical impairment is established, the subjective complaints of pain must be considered along with the medical evidence in determining the individual's work capacity. *See id.*

As a routine part of the administrative process in an appeal from a denial of disability benefits, the ALJ must review and assess the subjective comments of the claimant. This process requires the ALJ to assess the individual claimant's credibility related to claims of disability. An assessment of the individual's credibility must be based upon the entire record, including medical signs and laboratory findings; diagnosis, prognosis, and other medical opinions and statements/reports from the individual, treating or examining sources, and other persons with information about the effects of plaintiff's symptoms. SSR 96-7p. If medically determinable impairments are identified, the ALJ must assess the "intensity, persistence, and limiting effects of the individual's symptoms" to determine the extent of plaintiff's limitations. *Id.*

When making this assessment pursuant to SSR 96-7p, the ALJ must consider several

12

factors in addition to the objective medical evidence, to wit: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medications that the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factor concerning the individual's functional limitations and restrictions due to pain or other symptoms. *Id.*

As to a determination of whether the plaintiff's pain is disabling, the first consideration is whether the objective medical evidence shows the existence of an impairment which could reasonably be expected to induce the pain alleged. Medical factors which indicate disabling pain include: limitation of range of motion, muscle atrophy, strength deficits, sensory deficits, reflex deficits, weight loss or impairment of general nutrition, noticeable swelling and muscle spasms.

The medical record uniformly reflects that plaintiff exhibits none of these medical factors which might suggest a *debilitating* impairment. Although plaintiff's testimony, standing alone and if fully credited, may suggest that her heart condition prevents her from working eight hours a day on a sustained basis, the ALJ specifically found that the medical evidence does <u>not</u> support plaintiff's complaints of *disabling* symptomotology.

Indeed, plaintiff received no medical treatment at all for a period of fifteen months after bypass surgery from October 28, 2005 to February 12, 2007. Additionally, plaintiff's hammer toes and spur conditions of the feet[29] predated the alleged onset of disability and did not prevent

---

[29]*See* Dr. Purohit's Radiological Results dated August 2, 2004 [Adm. Rec. 158].

13

Caston from performing her past relevant work. As to chest pain, a comparison of chest X-rays taken April 11, 2005 and May 12, 2005 revealed no adverse change. Instead, test results yielded the following normal findings: (1) heart size; (2) trachea - in the midline; (3) lungs clear and without consolidation, effusion, mass lesion or pneumothorax; and (4) osseous structures - unremarkable. The impression was no evidence of acute cardio-pulmonary disease.[30] The medical record reflects no emergency room or hospital visits attributable to any condition including palpitations, chest pain or "shortness of breath" after her bypass surgery and discharge from the hospital in May of 2005.

The medical records disclose no sound basis whatsoever for crediting claimant's complaints of *disabling* pain or other symptoms. The ALJ discussed all of the medical evidence available and articulated sound reasons for discounting the plaintiff's subjective complaints of *debilitating* symptomotology. There is substantial evidence to support the ALJ's conclusion that Caston's allegations of "disabling" limitations are not corroborated by positive clinical or medical findings or treatment records. She was able to work for many years with toe and foot problems (spurs and hammer toes). Moreover, Caston had no history of complaints or treatment for any *mental* condition. Aside from plaintiff's testimony that she was not very smart, there is no evidence of any significant learning/academic deficit that would interfere with her ability to perform unskilled work. Indeed, plaintiff worked as a nurse's aid and housekeeper in a hospital setting for more than a decade.

SSR 99-2p provides that "[i]n assessing [residual functional capacity], all of the individual's symptoms must be considered in deciding how such symptoms may affect functional

---

[30]Lakeview Regional Medical Centery Records [Adm. Rec. 155].

capacities." SSR 99-2p. The ALJ fully complied with this requirement. Indeed, the decision contains a thorough evaluation of plaintiff's symptoms based on the medical evidence and her own testimony at the hearing.

The ALJ has sole responsibility for determining a claimant's disability status.[31] Where there is conflicting evidence regarding an issue reserved for the Commissioner, he has the responsibility to resolve that conflict.[32] The final decision on whether a claimant is disabled for purposes of the Act is a legal one rather than a medical one, and that determination may be made only by the Commissioner.[33]

The record establishes that the ALJ's RFC determination is supported by substantial evidence. As noted at the outset, plaintiff's treating physician (Dr. Amkieh) completed a functional capacity/medical evaluation on May 29, 2007, in which he opined that plaintiff was capable of performing a limited range of light work. The evaluation form executed by Dr. Amkieh specifically asked: "What is the most weight plaintiff should lift *working 8 hours per day, 5 days per week?*" Additionally the form asked: "Based on a full time work schedule *8 hours per day, 5 days per week*, how many hours total out of an 8 hour workday should Caston sit and stand/walk?"[34] Dr. Amkieh placed no specific limitation on plaintiff's ability to sit or stand. Instead, the *sole restriction* with respect to the activities of sitting and standing was that

---

[31]*Paul v. Shalala,* 29 F.3d 208, 211 (5th Cir. 1994); *Moore v. Sullivan,* 919 F.2d at 905.

[32]*Greenspan*, 38 F.3d at 237; *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Spellman*, 1 F.3d at 364; *Moore*, 919 F.2d at 905.

[33]*See Tamez v. Sullivan*, 888 F.2d 334, 336 n.1 (5th Cir. 1989).

[34]*See* Medical Evaluation/RFC Assessment dated May 29, 2007 [Adm. Rec. 186].

plaintiff must have the ability to *alternate between sitting and standing positions.*[35] Further, the Commissioner aptly notes that the restrictions placed on plaintiff's activities by the ALJ were even more restrictive than Dr. Amkieh. For example, Dr. Amkieh opined that the plaintiff could occasionally climb, whereas the ALJ determined that climbing was contraindicated altogether.

This Court cannot ignore the State Agency physician's opinion, which also supports the ALJ's determination. The November 7, 2005 physical residual functional capacity assessment completed by the State's expert indicates that the plaintiff can perform a limited range of light level work. Social Security Regulations and rulings discuss the reliance that should be placed on the State medical physician's opinions. Social Security Ruling 96-6p discusses the role of State medical consultants in the disability evaluation process. "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of medical issues in disability claims under the Act." *Id.* The consultants "consider the medical evidence in disability cases and make findings of fact on the medical issues, including, but not limited to, the existence and severity of an individual's impairment(s), [and] the existence and severity of an individual's symptoms...." *Id.* Because they are considered experts in the Social Security disability programs, the regulations require that the ALJ consider their findings of fact about the nature and severity of an individual's impairments as opinions of non-examining physicians and psychologists. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1527(f).

In summary, plaintiff has identified no medical statement which dilutes the record to the degree required to compel the conclusion that the ALJ's ultimate finding is insufficiently supported. To the contrary, the ALJ's findings are supported by substantial evidence discussed

---

[35]*Id.*

herein above. Considering the foregoing, Grid Rule 201.10 is inapplicable to the plaintiff's case because: (1) she is not restricted to sedentary activities and (2) the ALJ's determination that Caston is capable of performing certain light work identified by the VE is substantially correct.

## V. RECOMMENDATIONS

Substantial evidence supports the Commissioner's determination that Caston has the residual functional capacity to perform light work as a production assembler, packager/packer and cashier (alternating between standing and sitting) and that such work is available in significant numbers in the national economy. Because none of the plaintiff's points of error should be sustained and the Commissioner's determination is supported by substantial evidence,

**IT IS RECOMMENDED** that the Court GRANT the Commissioner's Cross Motion for Summary Judgment, DENY Plaintiff's Motion for Summary Judgment and DISMISS this case with prejudice.

## OBJECTIONS

Objections must be: (1) specific, (2) in writing, and (3) served within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b) A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the unobjected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 27th day of February, 2009.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE**